Alright, thank you counsel. We'll call our next case. Ms. Winkleman. Ms. Winkleman. I do have to adjust the mic just a little bit. Good morning your honors. My name is Nancy Winkleman. I'm here on behalf of the appellants along with my co-counsel at counsel table, Jerry Riso. The issue presented to this court is a narrow one. The briefs have, I believe, crystallized that issue. The question is whether the gain that all agree when River realized and did not recognize on the deemed liquidation of the subsidiary is an item of income that passes through to the shareholders under 1366. And it doesn't define, 1366 does not define item of income, does it? Well actually, your honor, that's an interesting question because the regulation, 1366, itself does not define item of income. But the regulation, which we quote in our brief, in our reply brief, but the commissioner has not responded to, regulation 1.1366.1A2, and it's at pages 21 through 23 of our opening brief and page 12 of our reply brief, in fact, does define item of income and includes in that definition this very type of income. Quote, the corporations combine net amount of gains or losses from the sales or exchanges of capital assets. And it's a very important point because one of the key themes of this case, stepping back, is that taxpayers should be permitted, in fact, are allowed, are encouraged to rely, must be able to rely in planning their conduct on the plain language of the code of the regulations. And here we have, we've been, if this is so plain, why aren't people all over America saying, hey, you know what, instead of paying taxes on $200 million worth of aggregate gain, why don't we end up claiming a $12 million loss by engaging in a Q sub-election and upping a basis when we don't declare income on our reports. That seems like an awfully attractive option. And if it's really all that plain that that's what the code allows, one would think that wealthy folks all over America would be doing it. But you seem to agree that this is a matter of first impression. Is that right? Putting aside the principles that were established in Gitlitz and Farley, which we briefed extensively, both parties did. That's correct, Your Honor. And I can't speak to other individuals. What I can speak to, though, is it does make it seem like it's a little less plain than you're saying, though, doesn't it? Let me walk through the provisions that collectively lead to the result that we encourage the court to find here. And start with where Judge Van Antwerpen started. What is an item of income under Section 1366 of the code? And you would agree also that the code supersedes regulations. You can't have regulations that are inconsistent with the code, right? That's correct, Your Honor. And there's nothing inconsistent. The regulation defines what item of income is. And the Commissioner's own revenue ruling, which I think How about Internal Revenue Code Section 331 and 332? They do not recognize corporate litigation gains as income, do they? Your Honor, Section 332 provides that this type of gain is not recognized. And that's key. That's key to the taxpayer's position here. Just because it's not recognized doesn't mean that it's not an item of income. You look to 1366. You look to the regulation. And very importantly, in terms of taxpayers being able to rely on the code and what the IRS itself has said, you look to the Commissioner's own revenue ruling, which we cite on pages 8 and 9 of our reply brief, which is in what the Commissioner agrees is an analogous context, the partnership context, in terms of the pass-through element of S-Corporations. And Gitlitz and Farley, didn't those really involve payments for an indebtedness? That's absolutely correct, Your Honor. Which is somewhat different than the situation here, isn't it? It's different in some respects, but in terms of what the key respect Because they're specifically designated as gross income under 61A, right? Well, actually, the cancellation of indebtedness income at issue in Gitlitz and Farley section was section 108, which said But in 108, it said it. It said cancellation of indebtedness is income specifically in the statute. Do you have anything that's akin to that in any statute in this case? Let me try two responses to these questions. The provision at issue in Gitlitz and Farley section 108 said gross income does not include. The regulation that the Commissioner relies on here, section 1.616, uses virtually identical language. Gains on the sale or exchange of property are not recognized. That is, are not included. It's the same scenario. But when you say it's the same scenario, certainly counsel for the government will be up here in a minute and speak for themselves, but isn't the pitch that's being made to us that this isn't a sale of property. This is deemed to be a liquidation, but that's a legal fiction for tax purposes. There isn't a sale of property here, and to act as if there were a sale of property here is to take that legal fiction and twist and turn it into something that could be the subject of tremendous abuse, like people declaring $200 million worth of income to be a $12 million loss. Don't let them turn a fiction into something it's not. That's the tenor of what I understand them to be saying. That's an argument I'd like you to respond to. I agree completely that that's the tenor, and the response is really what the IRS is talking about is more is the policy. This Court made clear in Farley, as Judge Roth said emphasized, that this Court's job is not to reach a result it deems fair to make a tax policy. It's to interpret the statute, and in fact, Section 332 works both ways. It could have worked to the taxpayer's disadvantage here. It happened to work to the taxpayer's advantage, but the government also discusses how it could work the other way. That's only if one accepts your premise about how 331 and 332 operate, right? I mean, one has to accept your assertion that this is an item of income, and it is immediately realized in order to get to the point you want to get, right? They deny that's the case, and the reason I understand they deny it is because of what we've just been through. This is not a sale of property. There's nothing that actually happened there, and you can't treat it as if it is. It's different from Farley and Gitlitz because 108D7 included something in the statute, and this doesn't. So your pushback on that, I understand it as well. The reg says something like that, but do you have anything else besides that to point out that their reasoning is faulty, it's flawed? Well, the starting point, 61A3, includes this type of gain. It identifies this type of gain as income, and then 1366 says it's an item of income, and the regulation says, in fact, this specific gain is exactly what we're talking about when we're talking about item of income. It doesn't define item of income, does it? The regulation, Your Honors, mentions it. Oh, yeah, all right, regulation. The regulation. How about 1.61-6B1? Doesn't that interpret gross income as not including unrecognized gains? And we take no issue with that. We don't view that as a problem because what we know from Gitlitz and Farley is that income that is not included in gross income can still be an item of income under 1366. I want to just mention, because I think it's important on this policy point. Yeah, policy. And I also have a problem with the idea of gaining, well, I guess it isn't 230, it's what, $214 million you gain, and the only thing you have to do is take a $12 million loss. That's an amazing section of the code. I'll keep that in mind for next April. It could work both ways. There's certainly nothing wrong with taxpayers minimizing the amount of tax they pay learned at hand. As an oft-quoted statement, there's nothing sinister in arranging one's affairs to keep taxes as low as possible. Sure, but if this were income, it's just remarkable to me that, you know, I don't think it would be a problem. The taxpayers here are taking the position that it's income realized, and we don't have any problem with being called unrecognized, but we don't have to put it on, we don't have to report it as income. We just get the benefit of bumping our bases by it so we can declare a loss. Let me ask you this question. Is there anything to be said for saying, hey, after Farley and Gitlitz, Congress went in and made it clear they didn't like that outcome, made it abundantly clear that they thought that was a wrong outcome and not the sort of thing to be repeated. Should we draw the conclusion they ask us to draw from that, or does that send us out into the land that Farley said don't go into? I think that's exactly the problem. I think that if one takes from the legislative history that the Commissioner relies on, basically tax planning, all bets are off. A taxpayer reads something in the code, reads something in the regulation, reads something in the Commissioner's own revenue ruling that we talk about that in the partnership context says that realized but unrecognized gain is income, and it requires the taxpayers to increase their bases. The taxpayers are entitled to rely on the code, the regulations, the Commissioners. Nobody ever before you guys read the code this way, it seems like. There's the Commissioner, the tax court judge made a point of saying they never cited a case to me, and I haven't found one. We've been looking. We haven't found one. Nobody in the United States of America has ever read the code the way your clients evidently read the code. So how far do you get with the argument that they're entitled to rely on the code, when nobody seems to have seen this in the code before now? There isn't a case one way or the other. There often is a first, and you know, I think... Makes the reliance argument a little tough, though, doesn't it? I mean, that's the pitch you're making to us is there's reliance here. There's reliance. Nobody ever relied on the I certainly would have told you about any case, Your Honor. I think part of what's underlying the Court's concern, which I fully appreciate, is that this would open the floodgates to abuse of transactions, to windfalls, to manipulations. I want to make clear that the IRS certainly has at its disposal numerous ways to prevent abuse, none of which it invoked here. It didn't question the validity of the creation of the S Corporation. It didn't question the validity of the Q sub-election. It knew about all these things. They were fully disclosed and fully reported. The IRS could have come in at any time, and if there was a case where there were some kind of abuse going on, the IRS can come and say, no, that's an invalid Q sub-election here. The stipulation, the case was tried on stipulated facts, of course. The stipulation was that the Q sub-election was valid. Yeah, I agree. I don't think anybody's claiming that it wasn't. They're claiming that your attempt to up your basis for income you didn't declare, that's where the problem lies, where you try to take a deemed transaction and a legal fiction and turn it into the basis of a $230-some million swing. That's what I take their issue to be. Income we didn't declare because Section 332 specifically says it's not to be recognized. Okay. Thanks very much. We'll have you back and we'll hear now from counsel for the government. Good morning. I'm Francesca Ugolini, counsel for the Commissioner of Internal Revenue. I'd like to first respond to my opposing counsel's argument that the Commissioner hasn't addressed the regulation under 1366 and the definition of an item of income. The regulation does not define income more broadly than Internal Revenue Code Section 61. And, in fact, the taxpayer in their opening brief conceded this point on page 29 of their brief. They made the same point. Section 61 provides the bedrock definition of item of income for purposes of Section 1366. So the regulation under 1366 does not provide any broader definition of income than Section 61. Is item of income broader or narrower or the same as gross income? I think the same as gross income. Is gross income, does the code ever define income standing alone without a modifier like gross in front of it? No. Section 61 is the definition of gross income. There's other parts of the code that define taxable income, which is gross income minus allowable deductions. But I think in the code, when the term income is used, it's generally referring to gross income unless it's modified in some other way. So we're directed essentially to Section 61. What do we make of the Supreme Court's statement in Gitlitz that not all items of income are included in gross income? And it cites 1366. Well, I mean, let's see. 1366, I mean if you're just looking at the phrase item of income, I think you're looking at what's an item of income generally under Section 61. To the extent the S Court provisions narrow that in terms of what are the pass-through items, I think 1366 can operate in a narrowing sort of way. But I don't understand the Supreme Court to have been saying that something that would normally be an item of income under Section 61 is defined differently under Section 1366. 1366 is really looking more at what are the separately stated items of income versus the non-separately computed items of income because there's a particular way that these items get sorted out when you're figuring out how does an S Corporation shareholder report these items. And so that's really the way that 1366 is doing as well as the regulations under 1366. I don't think that any of those particular rules in 1366 have been implicated in this case. The question really that we're looking at, and of course if this had been a recognized gain, there would be no question that that would be an item of income under both Section 1366 and Section 61. The point in this case is that we're dealing with unrecognized gain. And as the tax court held, the taxpayer's account were closed by the plain and unambiguous language of Section 332, which says that no gain or loss shall be recognized on the receipt by a corporation of property distributed in complete liquidation. So the unqualified language of this provision is dispositive of this case. It says no gain or loss shall be recognized. Respond would you to Ms. Winkleman's quoting to us from Treasury Reg 1.13661. And I understand that you understood her to be saying this is just the same as what was being relied on in Gitlitz and Farley. What's your comeback to that? The portion of the reg that she pointed out was, I guess, subsection A2, little 1, which says the separately stated items of the S corporation income include, and again this goes to this issue of separately versus non-separately stated, include but are not limited to the following items. And she pointed out the corporations combine net amount of gains and losses from sales or exchanges of capital assets group by holding period, et cetera, et cetera. So the question in this case is, okay, is this a gain basically? So we're back to this question of is the gain that was technically realized on this fictional liquidation, is it an item of income under 1366? 1366 does not define income more broadly than section 61. We look at section 61 to see is this a gain that would be treated as income? The regulations under section 61 specifically state that unrecognized gains are not included in or deducted from gross income. So section 61 and thereby section 1366 are speaking of it is unprecedented in the tax law to treat unrecognized gain as an item of income or as having any other collateral tax effect. That's the whole point of calling it an unrecognized gain. In this case, the taxpayer's argument basically is that recognition versus non-recognition is just a matter of including it in your taxable income and paying tax on it. But it's more than just that. Unrecognized means do not take it into account. We ignore it. That means it has no other collateral tax effects. How about realized? They made a lot of arguments about it. It was realized. How does that bear upon this? As a technical matter, it was realized only to the extent that what we've got going on here is a fictional liquidation. We're pretending that the insurance company distributed its assets up to the parent in exchange for the parent canceling its stock. So you've got this fictional exchange of property. Under the technical provisions of the tax code, that would be treated. You would look at what is the amount realized less your basis in the property you've given up. And that amount would be a realized gain. So we acknowledge that as a technical matter, gain has been realized. No gain was realized in any economic sense whatsoever. And in fact, that is what drives Section 332. The reason that this is a non-recognition transaction is because Congress understood that in a 332 liquidation, you have the mere removal of the corporate veil between parent and subsidiary. You have purely a change in form and no change in substance. So here's one thing I'm wrestling with here. Non-recognition by denotation means there's recognizing it for tax purposes, right? It doesn't say it's not income. It says we're not recognizing it. For right now, we're not recognizing it. And I understand Ms. Winkleman's clients to be saying the fact that you don't recognize something for some period of time doesn't mean it's not income. It is income. And the failure to recognize it for a period of time doesn't make it not income. So what's wrong with that reasoning? And would we be creating a lot of unforeseen problems to affirm the tax court on the broad assertion that it made that, quote, non-recognition provisions prevent realized gain from being included in a taxpayer's gross income, unquote? I realize that there's this sort of conceptual problem underlying the case. Once you're calling it unrecognized income, are you then saying that it's income? But we have to focus on what work is done by calling it unrecognized income. What's being done here is saying we are going to ignore that for federal tax purposes. We are not taking it into account for any federal tax purpose. So if you treat it as an item of income for purposes of 1366, you are giving it tax significance. You are allowing it to increase a shareholder's basis. And So I think that's the way out of this sort of semantic game that's sort of going on in this case. I think, you know, one other thing to understand here, I think, that distinguishes this case from Gitlet's is that Section 332 is not an exclusion provision the way that Section 108 was in the Gitlet's case. It is not located in the portion of the Internal Revenue Code that provides exclusions from income. It does not contain the language of an exclusion provision. It says no gain or loss shall be recognized. Whereas the exclusion provisions say gross income does not include dot, dot, dot. It also speaks in terms of a loss not being recognized. And a loss is not understood as excluded from or exempt from gross income. The Fourth Circuit made this point in the Universal Leaf case in which it held that are we calling it now income? There's a quote in our brief from the Fourth Circuit, the Universal Leaf case, which says that the effect of Section 332 is to not recognize this as income. So that's essentially, we're ignoring this for tax purposes. So what's the, for our thinking it through purposes, what is the distinction to be drawn, if any, between realized income and recognized income? In most cases in the Code, realized income is represented by economic income. And that was even the case in Gitlet's. Even though arguments were made about the shareholder shouldn't get a basis increase because there was no economic outlay, there was clearly an accession to wealth by the taxpayer, the S-Corp having its debt forgiven. There was a real economic event, not a fictional event. Correct. That's your point, right? Correct. And in almost every case, for example, in a liquidation that is recognized, a Section 331 liquidation, there is an economic event. So whatever realized gain or loss is borne by the taxpayer is reflected in some kind of economic detriment or benefit. But it's not something that is recognized for purposes here. Correct. Correct. What's left of Gitlet's and Farley after Congress got done with it? Hopefully not much. Congress, I think in that case, much has been made of the fact that Congress enacted a narrow, the taxpayers have called it a narrow amendment, that only addressed the issue that was in Gitlet's. I don't know that the Supreme Court at the time, even the Supreme Court, they dropped a footnote somewhere in the opinion that acknowledged that they didn't think that what was happening in Gitlet's was something that was available to many taxpayers because there was a conundrum in the 108 provisions about when the S-Corp shareholders are solvent and then the corporation is insolvent. And so they were mainly dealing with that. So Congress cleaned up 108 after Gitlet's and I think understood that it was taking care of Gitlet's because it was always understood as providing this narrow sort of loophole. But to the extent there's any doubt, in the House report, Congress said that when provisions of the Internal Revenue Code, such as 108, can be understood as producing, as providing a loophole that would, I don't have the exact quotas in our brief, but that would further tax avoidance, courts should construe it as not permitting that result. Well, can we really, look, the law is what the law is, not what somebody put in a House report, right? And if 331 and 332 operate the way the trusts say they operate, they have, as they point out, every right to take advantage of that, right? If Congress doesn't like it, they can go back in and tighten things up and say what they want to say. But the Commissioner can't get very far by saying, hey, there's a House report that says don't let them get away with it, can it? I understand, no, and I think that's a fair point and that the Commissioner's primary argument in this case is that this case is distinguishable from Gitlet's because the provisions involved are fundamentally different and the tax court made that point. We also, our position is also that Gitlet's shouldn't be perpetuated by the courts because of Congress's reversal of Gitlet's, but not so much relying on those statements in the House report. But the question was, what do we think is left of Gitlet's? Even if it's not, even if it doesn't dictate how courts should rule, we think Congress did express in the House report that they disagree with the result in Gitlet's. I just wanted to make a quick response to the revenue ruling that my opposing counsel referred to. That came up for the first time in their reply brief, so we haven't had a chance in our brief to address that. And I just wanted to say that the situation in the revenue ruling, 96-10, is completely different from this case. First of all, it involved different code provisions. It was Section 267 and Section 707, which govern related partnerships that sell property at a loss. And under those rules, in the revenue ruling, a partnership sells property at a loss to another partnership, and there's a real actual economic loss that gets suspended because the partnerships are related. Eventually, the property gets sold outside the related group, and the way these particular code sections work is to now give these partnerships the benefit of the actual suspended economic loss. And it's a real, not a deemed transaction. Correct. Correct. And there's an actual economic loss sustained. And so the revenue ruling steps in to provide a rule that otherwise might not be allowed under the code. It says, in this instance, we are going to let you increase your basis by the amount of the suspended loss, which is the same as the unrecognized gain in the later sale, so that the partners do finally get to take the benefit of this actual economic loss that was suspended under these other code provisions. That's clearly not what's going on in this case. And I think the revenue ruling actually reinforces that under a plain reading of the code, you would not use unrecognized gain or loss to affect your basis at all. That is why the IRS issued the ruling in this case to step in and provide an equitable policy-based rule in the 96-10 to preserve the intent of the statutes. Unless the Court has any further questions? Ms. Winkleman? Thank you, Your Honors. Just a few reactions. One, on this issue of why didn't anyone else think of this if it was so obvious? I guess the same could have been said prior to the Gitlitz-Farley line of cases. And this Court was very clear, Judge Roth was very clear that in her holding in that case, that we are aware that the result reached today in interpreting the relevant statutory language may not have been the result intended. We are not free to disregard the clear and controlling language. We're more concerned about the unintended consequences of our ruling in this matter. What I think was expressed, you know, that would we be opening the floodgates, that's really one of the paramount thoughts in any ruling that a circuit court judge has to make. Absolutely, and Judge Roth was concerned about that, too, and said if Congress has a problem with this, Congress can amend it. Here, even more so, though... Well, 108D7A, that was in the Code as an exclusion. The Court was prepared to say it says what it says. Here, I guess we're grappling with, you say the Code here and the regs are plain on this point, but how do you square up the word, a word like deemed, which seems to indicate that the Code is recognizing and telling tax practitioners and judges that this is not a real transaction, this is a legal fiction, how do you get around words like that and say it's plain that this should be treated as if it were a transaction of tax? The deemed liquidation is not a fiction. It's a real event. The parent realizes gain on its investment. There's no real liquidation. You treat it as if it's a liquidation. Nobody goes out and sells a stock. You take that and you treat it as if. Am I mistaken? That's correct, Your Honor, but the way that 332 and 1366 work together is the gain on the deemed liquidation is not recognized, and just to get back to the realization versus recognition, which is one of, I think, the most startling aspects of the tax court's opinion, realization is when the gain could be taxed. Recognition is when it actually is taxed. 332 says that this deemed liquidation, the gain is not recognized. 1366 says items of income and the regulation then defines what those are flow through to the shareholders. I am very clear that the court may not like the result. It would not open the floodgates, Your Honor, because if there was a problem with the valuation, if there was a problem with the Q sub-election, here there was 3 1⁄2 years between the two. That's not the point, right, when you say it wouldn't open the floodgates. Why wouldn't every wealthy individual with the capacity to set up an S corporation not do exactly what your clients did and turn their hundreds of millions of dollars in gain into tax loss if this is the law? Why isn't that just an open invitation? I guess if I was standing here arguing before this court in Farley, I would have answered the question the way the court ended up answering the question. It's not our job and if Congress doesn't like it, just like it amended 108 after Gitlitz, it could amend 1366, it could amend 332, but it hasn't and it didn't and our clients were entitled to rely on the result that was produced. Okay, thank you very much for your argument. It was well argued on both sides. We appreciate counsel's time. We'll take the matter under advisement in recess court. What do we have to do to get this trust, Brian? Thank you, good point. We would like to have counsel arrange to have a transcript of this. This is a sufficiently technical area that it would be helpful to have this argument in print. Thank you. We'll call at 10.30am. 10.30am 10.30am